```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                          COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE         *    MDL Docket No. 2004
                                       4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS     *
                                       Case No.
LIABILITY LITIGATION              *    4:13-cv-376 (Hooker)
_____
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Patricia Hooker was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Hooker brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Hooker also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on several of Hooker's claims. For the reasons set forth below, Mentor's partial summary judgment motion (ECF No. 39 in 4:13-cv-376) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

On May 25, 2004, Dr. Leonard Kurello implanted Hooker with ObTape to treat her stress urinary incontinence. In 2008, Hooker experienced several complications, including urinary tract infections, recurrent vaginal discharge, and spotting. She sought treatment for these symptoms from Dr. Erica Sikkenga in August 2008. Dr. Sikkenga found a two centimeter piece of mesh in Hooker's vagina; she snipped a piece of it and showed it to Hooker. Dr. Sikkenga told Hooker that additional exposed mesh would have to be surgically removed, and Dr. Sikkenga removed additional exposed mesh on August 14, 2008.

Hooker continued to experience vaginal discharge symptoms, and Dr. Sikkenga referred her back to Dr. Kurello. On January 21, 2009, Dr. Kurello found more exposed mesh in Hooker's vagina. Hooker asserts that Dr. Kurello told her at that time that he had seen a lot of erosions with ObTape and had switched

2

to another manufacturer because of it. On March 3, 2009, in conjunction with another procedure, Dr. Kurello attempted to remove all of Hooker's remaining ObTape. Hooker was a Michigan resident when she filed this action, and all of her ObTape-related medical treatment occurred in Michigan.

Hooker asserts claims for strict liability (design defect, manufacturing defect, and failure to warn); negligence; breach of express warranty; breach of implied warranty; common law fraud; constructive fraud; and negligent and intentional misrepresentation. Mentor seeks summary judgment on Hooker's strict liability and warranty claims, contending that they are time-barred. Hooker does not contest summary judgment on her warranty claims, so Mentor is entitled to summary judgment on those claims. The only issue remaining is whether Hooker's strict liability claims are time-barred.

DISCUSSION

On July 9, 2013, Hooker served Mentor with a Complaint captioned in the Hennepin County District Court of the State of Minnesota. Mentor removed this action to the United States District Court for the District of Minnesota. The case was later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Hooker's claims. *See Cline v. Mentor*, No. 4:10-cv-5060, 2013 WL 286276, at *7

3

(M.D. Ga. Jan. 24, 2013) (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

Mentor asserts that Hooker's strict liability claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years."). Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law). Thus, as the Court has concluded on several occasions, a plaintiff's strict liability cause of action accrues under Minnesota law when the plaintiff learns that she has an injury that is related to a product. *E.g., Watson v. Mentor Worldwide, LLC*, No. 4:13-cv-27, 2016 WL 1574071, at *2 (M.D. Ga. Apr. 19, 2016) (quoting *Klempka*, 963 F.2d 168, 170 (8th Cir. 1992) ("A plaintiff who is aware of both her injury

4

and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause.")). For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory disease, which her doctor said was caused by the plaintiff's intrauterine device. *Klempka*, 953 F.2d at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, Hooker contends that she did not learn of a connection between ObTape and her injuries until she saw a television commercial regarding mesh complications in 2012. But Hooker knew or certainly should have known that she suffered some injuries caused by ObTape well before then. By August 2008, when Hooker sought treatment for several symptoms, Hooker knew that her ObTape had become exposed and that a portion of it had to be surgically removed. By January 2009, Hooker knew that Dr. Kurello found more exposed mesh that had to be removed. And, as Hooker pointed out, Dr. Kurello told her in January 2009 that he had seen a lot of erosions with ObTpae and had switched

to another manufacturer because of it. Therefore, Hooker knew by January 2009 at the latest that there was a likely connection between ObTape and some of her injuries. She did not file her complaint until more than four years later, in July 2013.

Like many other plaintiffs in this MDL whose claims are governed by Minnesota law, Hooker argues that it is not enough that she made a connection between ObTape and some of her injuries. Rather, she argues that she must have been on notice that a *defect* in ObTape caused her injuries. The Court has considered this argument on several occasions and rejected it because, like Hooker, the plaintiffs in those cases "did not point to any Minnesota authority holding that a plaintiff must be on actual notice that her specific injuries were caused by a product defect." *See Watson*, 2016 WL 1574071, at *2. The Court noted that "the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product." *Id.* (citing *Klempka*, 963 F.2d at 170).

Hooker's argument is nearly identical to the plaintiff's argument in *Watson* (which was nearly identical to the argument of other plaintiffs in this MDL)—from the language used in her brief to the cases she cites. The Court has already considered the argument and the cases. Hooker presented no new arguments or authority. Like the other plaintiffs, Hooker relies on

6

*Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004), and *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013).[1]  As the Court previously observed, "*Hildebrandt*, *Tuttle*, and *Huggins* are all distinguishable from" cases like this one, where the plaintiff knew or should have known of a connection between her injuries and a product. *Watson*, 2016 WL 1574071, at *3.  "In *Hildebrandt*, *Tuttle*, and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else, and the courts concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury." *Id.*  "In contrast, here, [Hooker] suffered injuries that were connected to an erosion of the ObTape, and [Hooker] knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time her doctor" diagnosed her with an erosion of the ObTape, told her that it needed to be removed, and told her about the problems he had observed with the product. *Id.*  Hooker offered no Minnesota authority to support a departure from the Court's previous interpretation of Minnesota law on this subject.

---

[1] And like other plaintiffs, Hooker relies on *Sanchez v. Boston Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *8–*9 (S.D. W. Va. Jan. 17, 2014).  *Sanchez* was decided under California law, not Minnesota law, and thus has no application here.

7

Hooker appears to argue that even if her claims are untimely under Minnesota's discovery rule, the statute of limitations should be tolled by fraudulent concealment. "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Sw. Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).

As discussed above, Hooker knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time Dr. Kurello diagnosed her with an erosion in January 2009. In addition, Hooker pointed to evidence that Dr. Kurello told her that he had seen a lot of erosions with ObTape and he had thus switched to another manufacturer. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem—such as the medication Hooker was taking for her other health issues. But Hooker pointed to no evidence that she

took any action to investigate her potential claims even though she knew there was a connection between her injuries and the ObTape *and* that her doctor had experienced problems with ObTape. Under these circumstances, the Court concludes that fraudulent concealment does not toll the statute of limitations. Hooker's strict liability claims accrued in January 2009 at the latest. She did not file this action within four years, so her strict liability claims are time-barred.

## CONCLUSION

For the reasons set forth above, Hooker's strict liability claims are time-barred under Minnesota law. She does not dispute that Mentor is entitled to summary judgment on her warranty claims. Mentor's Motion for Partial Summary Judgment (ECF No. 39 in 4:13-cv-376) is therefore granted. Hooker's negligence, fraud, and misrepresentation claims remain pending for trial.

This action is now ready for trial. Within seven days of the date of this Order, the parties shall notify the Court whether they agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 2nd day of September, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

9